J-A09022-26                    2026 PA Super 144

JAMES DAVIS, INDIVIDUALLY AND : IN THE SUPERIOR COURT OF
IN HIS REPRESENTATIVE CAPACITY : PENNSYLVANIA
FOR THE INDIVIDUAL RETIREMENT :
ACCOUNT FBO JAMES DAVIS :
:
:
:
v. :
:
:
: No. 804 WDA 2025
WOODBURY FINANCIAL SERVICES, :
INC. AND BELIVEAU BAYS :
:
:
APPEAL OF: BELIVEAU BAYS :

Appeal from the Order Entered June 10, 2025
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s): 24CI01888

BEFORE: NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

OPINION BY McLAUGHLIN, J.:                    **FILED: July 7, 2026**

Beliveau Bays appeals from the denial of his petition to strike and/or open the default judgment entered against him and in favor of James Davis, individually and in his representative capacity for the individual retirement account FBO James Davis ("Davis"). We affirm.

Davis sued Bays and Woodbury Financial Services, Inc. ("Woodbury") in Westmoreland County over the alleged mishandling of retirement funds. Davis filed a complaint asserting violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law[1] and the Pennsylvania Securities Act,[2]

---

[1] 73 P.S. §§ 201-1 – 201-10.

[2] 70 P.S. §§ 1-401, 1-403, and 1-501.

as well as claims of common law fraud, breach of fiduciary duties, negligent misrepresentation and non-disclosure, and breach of implied contractual duties.[3]

After numerous efforts to make original service of the complaint on Bays, Davis moved for alternate service on Bays by publication. The trial court summarized Davis's efforts to serve Bays as follows:

> Attorney [Michael] Betts avers that he initially served Bays by certified mail at an address in in Montreal, Canada that Bays used in a 2024 lawsuit in Texas. When this was undeliverable, Attorney Betts states that he sent the complaint to an email address used by Bays in the Texas suit and concurrently engaged an investigative firm that returned a residential property owned by Bays in Plano, Texas. He made multiple attempts at in-person service at the Plano address in August 2024, and the process sever affidavit is included at Exhibit 1-A to the motion, including a statement by a neighbor that Bays lived there, along with packages seen that were addressed to Bays at the Plano address.
>
> In September 2024, Attorney Betts received discovery from [] Woodbury that included two last known addresses for Bays: the Plano address and an address in Montreal. Attorney Betts reengaged the investigative firm to continue its search, [] and it again found that the Plano address was valid and that the Canadian address was not locatable. A final attempt at service by certified mail was made at the verified Plano address in October 2024, but it was not accepted. This led Attorney Betts to file the Motion for Alternative Service.

---

[3] The complaint also asserted failure to supervise and vicarious liability claims against Woodbury. Woodbury filed an answer and new matter, to which Davis filed a reply.

Trial Ct. Order, filed June 9, 2025, at 2-3 ("Order Denying Pet. to Strike/Open"). The court granted the motion and directed Davis to serve Bays by publication in the Westmoreland Law Journal and the county paper. Order, filed Nov. 15, 2024. Davis made service through publication. Praecipe for Entry of Default, filed Dec. 27, 2024, at Exhs. 1, 2.

Davis filed a praecipe for entry of default judgment against Bays, and the prothonotary entered judgment on December 27, 2024. Approximately three months later, on March 31, 2025, Bays filed a petition to strike and/or open default judgment. Davis opposed the motion and relied in part on the affidavit of his son, Darin Davis. His son stated that Bays called him in May 2024 and "based on [their] conversation it was clear that [Bays] was aware that the case had been filed and that he had been named as a defendant." He noted that Bays said there was another lawsuit pending against him and "asked whether [his] father's lawyer was cooperating with the lawyer who was handling the other case."[4] Mot. for Service by Publication, filed Nov. 13, 2024, at Exh. 2, at ¶ 3. The affidavit also stated that during the conversation, Bays informed Darin that he had recently received a law degree. *Id.* at ¶ 4. After the court held a hearing, it denied the petition to strike and/or open default judgment. Bays appealed.

Bays raises the following issues:

---

[4] The affidavit was attached to Davis's motion for service by publication and relied on in that motion and in the response to the petition to strike and/or open.

(1) Whether the Court below erred in denying Bays's "Petition to Strike and/or Open Default Judgment" wherein the method of substitute service was not reasonably calculated to provide actual notice of the lawsuit to Defendant in accordance with 42 Pa.C.S.A. § 5323(a)(5) and the Fourteenth Amendment to the United States Constitution and therefore there was a defect of record warranting the default judgment being stricken.

(2) Whether the Court below abused its discretion in denying Bay[s]'s "Petition to Strike and/or Open Default Judgment" wherein the Court declined to open the default judgment in accordance the standard, equitable three part test for opening default judgments despite the Petition being promptly filed, with a reasonable excuse, and having a meritorious defense.

(3) Whether the Court below erred in denying Bay[s]'s "Petition to Strike and/or Open Default Judgment" wherein the Court declined to set aside the default judgment pursuant to the Hague Service Convention.

Bays's Br. at 13-14 (suggested answers omitted).

Bays first claims the court erred because the method of substitute service was not reasonably calculated to provide Bays actual notice of the lawsuit and therefore a defect existed in the record warranting striking the judgment. He maintains the substituted service did not conform to 42 Pa.C.S.A. § 5323, "Service of process on persons outside this Commonwealth," and did not satisfy the Due Process Clause of the Fourteenth Amendment.

Bays argues that the motion for alternative service did not discuss how the service by publication in the Westmoreland Law Journal and a newspaper circulated in the county was "reasonably certain to notify a defendant of litigation pending against him." Bays's Br. at 28 (citation omitted). He claims

that Davis "conceded he had no knowledge as to whether Mr. Bays ever resided in Westmoreland County [or] ever read the Westmoreland County Law Journal or Tribue Review, Westmoreland [E]dition." *Id.* He points out that the 10-day notice of default judgment was served at Texas and Canada addresses, not a Westmoreland County address.

Bays contends the court focused on Davis's efforts to comply with Rule of Civil Procedure 430, "Service Pursuant to Special Order of Court[,] Publication," but did not address whether he complied with Section 5323(a)(5), which permitted service of process outside the Commonwealth "when reasonably calculated to give actual notice[.]" 42 Pa.C.S.A. § 5323(a)(5). *See also* Pa.R.Civ.P. 430. Bays argues the court did not discuss how service by publication in the county where the tort was allegedly committed was reasonably calculated to give actual notice to Bays, who states he has never resided in the county. He next contends the trial court conflated "unsuccessful attempts at service with service in accordance with the Court's directives." Bays's Br. at 32. Bays maintains there is nothing that limits alternative service to service by publication. He notes the rule allows a "special order directing the method of service." *Id.* (citation omitted). He claims the court could have ordered service by posting the complaint on the Texas property, providing it to his neighbors, emailing it, or notifying him by phone as to where he could find the complaint.

"A petition to strike a judgment operates as a demurrer to the record, and must be granted whenever some fatal defect appears on the face of the

record." ***Oswald v. WB Pub. Square Assocs., LLC***, 80 A.3d 790, 793-94 (Pa.Super. 2013) (citation omitted). "The standard for 'defects' asks whether the procedures mandated by law for the taking of default judgments have been followed." ***Roy by & through Roy v. Rue***, 273 A.3d 1174, 1182 (Pa.Super. 2022) (citation omitted). A fatal defect is a defect that deprives the prothonotary of authority to enter the default judgment, which renders the judgment void *ab initio*. ***Id.***; ***see also Penn Nat'l Mut. Cas. Ins. Co. v. Phillips***, 276 A.3d 268, 274 (Pa.Super. 2022).

"When deciding if there are fatal defects on the face of the record for the purposes of a petition to strike a judgment, a court may only look at what was in the record when the judgment was entered." ***Oswald***, 80 A.3d at 794 (citation omitted). Notably, a petition to strike a judgment does not involve the exercise of the trial court's discretion. ***Dubrey v. Izaguirre***, 685 A.2d 1391, 1393 (Pa.Super. 1996); ***see also Green Ridge Bank v. Edwards***, 372 A.2d 23, 26 (Pa.Super. 1977) (*en banc*) ("[O]ne who petitions to have a judgment stricken is required to show purely formal defects; given such defects, the petitioner prevails without regard to whether their conduct has been equitable"). Our standard of review is *de novo* and our scope of review is plenary. ***Rue***, 273 A.3d at 1181.

Here, the record establishes that the trial court granted a petition to serve by publication, and Davis published the required documents in the listed publications. There is nothing in the record to show a fatal defect on the face of the record. This claim lacks merit.

In his next two issues, Bays challenges the denial of his petition to open the judgment. Bays claims the court abused its discretion when it did not grant the petition to open the default judgment claiming it was promptly filed, with a reasonable excuse, and he had a meritorious defense. Bays maintains he learned of the matter "shortly before retaining counsel and filing the Petition" and that it took additional time to prepare the petition due to the complexity of serving an individual in a foreign country along with the application of Section 5323(a)(5). Bays's Br. at 35. He argues that the trial court should not have relied on a phone call between Davis's son and Bays in May 2024 because that call was prior to the service of original process. He maintains he could not file the petition to open until default judgment was entered December 2024.

Bays maintains his failure to appear or file a timely answer was excused by his lack of knowledge regarding the matter. He claims there are "very serious issues regarding service of original process." *Id.* at 36. He claims that he has a reasonable excuse for not defending the lawsuit because the method of service was not reasonably calculated to give him notice. Bays also claims he has numerous meritorious defenses.

"[A] petition to open a default judgment is an appeal to the equitable powers of the court, and absent an error of law or a clear, manifest abuse of discretion, it will not be disturbed on appeal." *Myers v. Wells Fargo Bank, N.A.*, 986 A.2d 171, 175 (Pa.Super. 2009) (quoting *US Bank N.A. v. Mallory*, 982 A.2d 986, 994 (Pa.Super. 2009)). "An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law,

or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will." ***Id.*** (quoting ***Mallory***, 982 A.2d at 994). A court may open a default judgment "if the moving party has (1) promptly filed a petition to open the default judgment, (2) provided a reasonable excuse or explanation for failing to file a responsive pleading, and (3) pleaded a meritorious defense to the allegations contained in the complaint." ***Id.*** at 175-76. The failure to satisfy any prong of this test will result in denial of the petition to open. ***U.S. Bank Nat'l Ass'n for Pa. Hous. Fin. Agency v. Watters***, 163 A.3d 1019, 1028 (Pa.Super. 2017).

Regarding the first prong of the test for opening a default judgment, "[t]he timeliness of a petition to open a judgment is measured from the date that notice of the entry of the default judgment is received." ***Digital Communications Warehouse, Inc. v. Allen Invs., LLC***, 223 A.3d 278, 285 (Pa.Super. 2019) (citation omitted). "The law does not establish a specific time within which a petition to open a judgment must be filed to qualify as timely." ***Id.*** (citation omitted). Rather, it directs the court to "consider the length of time between discovery of the entry of the default judgment and the reason for the delay." ***Id.*** at 285-86 (citation omitted). "In cases where the appellate courts have found a 'prompt' and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month." ***Mallory***, 982 A.2d at 995.

As to the second prong, "[w]hether an excuse is legitimate is not easily answered and depends upon the specific circumstances of the case. The

appellate courts have usually addressed the question of legitimate excuse in the context of an excuse for failure to respond to the original complaint in a timely fashion." *Id.* (citations omitted).

The court found Bays failed to meet the first two prongs of the test for opening default judgments – promptly filing a petition to open the default judgment and providing a reasonable excuse or explanation for failing to file a responsive pleading. The trial court found that Bays's contention that he learned of the lawsuit from one of his attorneys in mid-March was belied by the record. The court noted that Davis's adult son averred he had spoken to Bays in May 2024 and that Bays stated during that conversation that he was aware of the litigation. Pet. To Strike/Open Order at 4. The court pointed out that Bays presented no evidence to contradict the affidavit. *Id.* at 4-5. It concluded Bays did not meet his burden to show he promptly filed the petition to open. *Id.* at 5. We further point out that the praecipe for entry of default judgment was served at the last known addresses for Bays – the Plano, Texas address and the Montreal address.

The trial court further concluded Bays did not have a reasonable explanation for not filing an answer or responsive pleading. It found its decision to allow service by publication in the county where the torts occurred was not error. It reasoned the alternative service occurred after Davis "attempted to provide service of process in numerous ways which were plainly calculated to provide notice to Mr. Bays." Trial Ct. Op., filed July 28, 2025, at 3 ("Rule 1925(a) Op."). The court noted that the service by publication was

- 9 -

done in addition to other service attempts under 42 Pa.C.S.A. § 5323(a), and that it was done in the county where the torts occurred because there was "no confirmation that Mr. Bays resided in either Texas or Quebec after significant investigation." *Id.* The court further found Bays did not testify and his counsel did not provide a current address for Bays:

> Mr. Bays did not appear to testify before the court, and his counsel was not able to provide a current address for Mr. Bays, despite having been retained by him. [Davis's] counsel's supplemental affidavit filed April 24, 2024 indicates that the Plano, Texas residence is still owned by Mr. Bays, and would thus still be a potentially valid residential address. Mr. Bays['s] counsel indicated to the court that he had been staying at different associates' homes in Quebec while undergoing treatment for cancer and so he does not have a permanent address, however, there was no testimony or other evidence provided to substantiate this.

Order Denying Pet. to Strike/Open at 5. The court concluded Bays did not adequately explain his failure to defend the action and therefore could not succeed on the request to open. The court concluded the "equities favor [Davis] where . . . Bays'[s] conduct is plainly dilatory in nature." Rule 1925(a) Op. at 4.

The record supports the court's findings, and it did not abuse its discretion in finding Bays did not promptly file his petition and did not have a reasonable explanation for not responding to the complaint. Bays filed the petition more than three months after default judgment was entered and the uncontradicted affidavit of Davis's son indicates that Bays knew of the lawsuit.

- 10 -

In his last issue, Bays claims the court erred when it declined to set aside the default judgment pursuant to the Hague Service Convention. He argues that he filed his petition shortly after learning of the default judgment and not more than a year had passed since entry of judgment. He claims he was not at fault because the method of original service was not reasonably calculated to give him notice. He therefore maintains he should be relieved from the default judgment. He claims the Hague Service Convention applied because Davis argued below that Bays's address was known to be in Canada or Texas.

The trial court rejected Bays's claim that it should have opened the judgment per the Hague Service Convention. The court pointed out that in the case relied on by Bays – ***Peanuts Worldwide LLC v. Partnerships & Unincorporated Associations Identified on Schedule A***, 347 F.R.D. 316, 321 (N.D. Ill. 2024) – the court noted that "Article I of the Convention states that it 'shall not apply where the address of the person to be served with the document is not known,' so long as the plaintiff has made a diligent attempt to locate the address." Rule 1925(a) Op. at 4 (citation omitted). The court noted Davis was unable to locate Bays in Pennsylvania, Texas, Canada, or anywhere else, and Davis documented his attempts in affidavits filed with the court. ***Id.*** The court concluded the Hague Service Convention did not apply. ***Id.***

This was not error. Article 1 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, that is,

- 11 -

the Hague Service Convention, provides that, "This Convention shall not apply where the address of the person to be served with the document is not known." Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361. ***See also United States v. 200 Acres of Land***, 773 F.3d 654, 659 (5th Cir. 2014) ("Moreover, the Hague Convention does not apply when the address of the person to be served is unknown."). Here, the record supports the trial court's finding that there was no known address for Bays. The trial court therefore did not err in finding the Hague Service Convention did not apply.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

7/7/2026